23 C.C.P.A.(Patents)

### In re BARBARINO.

### Patent Appeal No. 3612.

Court of Customs and Patent Appeals.
April 6, 1936.

Thomas A. Hill, of New York City, for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

Salvatore Barbarino filed an application in the United States Patent Office for a patent on alleged new and useful improvements in vehicles. The application and drawings disclose that the alleged improvement was an arrangement of parts by means of which the applicant claimed an elimination of the so-called "shimmy" or vibration of the steering gear of an automobile, ordinarily occasioned by rough and uneven roads. To accomplish this purpose, the leaf spring on the front axle, on the steering post side of the vehicle, is so mounted that the rear end of the spring is pivotally fixed, while the front end thereof is attached to a unitary shackle member, which shackle is pivotally connected at its lower end to the end of the leaf spring, and in its upper end to the frame, thus permitting the front end of the leaf spring to move longitudinally with respect to the frame. In addition, the shackle member is provided on one side thereof with a laterally acting resilient device embodying a coil spring and sleeve which permits some lateral shifting of the end of the spring within the shackle member. When in position, the shackle member extends vertically. It is claimed that, because of the fixed pivotal connection of this spring at the back end and the floating

motion at the front end, together with the lateral play of the member, "shimmying" or vibration of the steering rod and steering wheel is avoided.

The following references were cited by the Examiner: Palmer, 939,158, November 2, 1909; Collier, 1,422,034, July 4, 1922; Barbarino, 1,839,189, December 29, 1931; Hallner, 1,234,014, July 17, 1917; Layman, 1,217,096, February 20, 1917; Ward, 1,377,234, May 10, 1921.

The patent to Palmer shows an arrangement of the forward portion of an automobile in which, as shown by figure 2, a leaf spring underneath the frame is pivoted at the rear end and attached to a shackle member at the front end. In this patent the shackle member connects the frame to the spring; the spring connection being uppermost.

The patent to Layman shows a spring supporting the front end of the chassis; figure 1 showing said spring attached to a pivot at the rear end and with a shackle member at the front end, as is shown by the applicant here. In this case the spring is below the chassis frame and the shackle member is vertical.

The patent to Hallner shows the front end of an automobile with a semielliptical spring on the steering side. At the rear end this spring is attached by a fixed pivot. At the front end, as shown by figure 3, the upper leaf of the spring curves outward and over the end of the main frame of the vehicle in a gooseneck, and is attached thereto by a shackle member, which, in its normal state, stands in a vertical position; the end of the main frame being underneath.

The patent to Collier shows a vehicle, the wheels of which are preferably journalled on swinging spindles mounted on axles which are secured to the under side of leaf springs. These leaf springs are arranged "in a vertical plane" beneath the end bars or beams. The outer end of each spring is secured to a pivoted shackle, which is mounted on the adjacent end bar or beam, while the inner end of each spring is secured to a fixed bolt or pivot.

The former patent to Barbarino shows exactly the same construction, aside from the bumper element, which is shown in the present application.

It is stated by counsel that the bumper construction which is shown in the present application has been divided out and is now the subject of another application in the Patent Office. This element will therefore not be further considered by us here.

On the hearing in this court, the appellant moved to dismiss the appeal as to claims 1, 8, 15, and 18.

The Examiner held that claim 2 was fully met by the references Collier and Layman, as well as being unpatentable over Hallner in view of Layman, and that there would be no invention in substituting the leaf spring and compression shackle of Layman for the leaf spring and tension shackle of Hallner.

Claims 5 and 8 were held to be substantially similar to claim 2, and were rejected for the same reasons.

Claims 6 and 7 were held to differ from claims 1 and 2 of Barbarino's reference patent only in the statement that the shackle is below the frame of the vehicle, which the Examiner thought was not a patentable distinction, in view of Collier and Layman. Furthermore, the Examiner was of opinion that this was an immaterial limitation and that the claims should therefore be rejected because of double patenting.

As to the remaining claims, the Examiner was of opinion that claim 14 was substantially a duplicate of claim 9, and claim 17 substantially a duplicate of claim 12.

Claims 9 and 14 were rejected by the Examiner on figure 1 of Layman, and on Hallner in view of Layman.

Claims 10, 15, 12, and 17 were rejected on reference to Layman, as well as on Hallner in view of Layman.

An appeal was taken, and thereafter the applicant filed three affidavits. These were made and subscribed by three engineers and discuss the Hallner reference. Each affiant comes to the conclusion that the Hallner front shackle connection will not operate in the same manner as the connection of applicant and will not eliminate vibration and "shimmying," but will have, rather, a tendency to accentuate them. The application was remanded to the Examiner for further examination. In his supplemental answer the Examiner stated:

"Applicant has presented the affidavits of two disinterested engineers, purporting to show that the device of the Hallner reference can not perform the function stated therefor in said patent. It is well known that in the attachment of semi elliptical

springs to a vehicle frame that if one end of the spring is rigidly pivoted to the frame that the other end must be flexibly connected thereto in some manner to permit the spring, as it moves toward or from the frame, to lengthen and shorten during such movement. This is usually done by shackle links connected to the other spring and to the frame and illustration which will be found at 15 in the Layman reference. The Hallner device in the curve of the end 15 is believed to be another form of flexible connection which would by the flexibility of the part 15 permit the same operation of the spring as is noted above, and it is believed that there should be shown in the sketches two dotted line positions of the part 15 into which it has flexed to accommodate the varying lengths of the spring as it moves toward or away from the frame of the vehicle. In other words the part 15 functions in substantially the same manner as would the shackle links of the patent to Layman and there would not be the exaggerated position of the parts 7 and 10 as shown in the sketches accompanying the affidavits.

"While the patent to Hallner does not specifically describe the function of the part 15, it is apparent that such operation as above described must be that intended in order that the anti-shimmying function of his device will be operative."

The Board of Appeals affirmed the decision of the Examiner. In doing so it thus discusses the Hallner reference and the affidavits pertaining to the same:

" * * * As to the patent to Hallner, while appellant has attacked this patent on the ground that the scroll 15 would not act as a pivotal connection to allow of a longitudinal movement of the spring even if the shackle shown in Fig. 3 were introduced, yet we are not convinced of that fact. It seems to us that the shackle shown in Fig. 3 would not be introduced unless it was for the purpose of allowing some longitudinal movement of the spring and regardless of whether the construction shown in Fig. 1 would allow such movement, it is our view that the construction shown in Fig. 3 would and does. Hallner describes the purpose of his device to allow the wheels to 'run true to the line of travel' and avoid wobbling or vibration imparted to the wheel, which seems to be a similar function to that of appellant.

"The examiner considers that it is lacking in invention to substitute the compression shackle of Layman for the tension shackle of Hallner. That is our view. Whether the shackle supporting the spring be below the frame or above as in Hallner does not appear material but if considered material, is suggested by Layman. Furthermore, while Layman may not have a fixed support for his spring at the rear end, yet it is substantially fixed against longitudinal movement and the construction of Layman has the advantages suggested by appellant."

The claims on appeal are 1, 2, 5 to 10, inclusive, 12, 14, 15, 17, and 18, of which claims 2, 6, 9, 10, and 12 are typical, and are as follows:

"2. In a vehicle of the class described, a steering wheel and a spring suspension at one side of the front of said vehicle, the back of said spring suspension being pivotally fixed with reference to the frame of said vehicle, and the front of said spring suspension being secured by shackle to and below the frame of said vehicle."

"6. In a vehicle of the class described, a steering wheel and a spring suspension at one side of the front of said vehicle, the back of said spring suspension being pivotally fixed with reference to the frame of said vehicle, and the front of said spring suspension being secured by shackle below the frame of said vehicle, said shackle having resilient means for moving said spring suspension laterally with reference thereto."

"9. In a motor vehicle, the combination of a frame, a steering axle extending crosswise of the frame, a multiple leaf spring connected at both ends to the frame and intermediate its ends to the axle, the spring extending across the axle and having a leaf secured against the axle, the connection of the front end of the spring being below the frame and such as to permit the spring end to move longitudinally relative to the frame as the spring is flexed, and the connection of the other end of the spring to the frame being such as to substantially prevent the spring end moving longitudinally relative to the frame as the spring is flexed, a steering knuckle mounted on the axle, a steering gear mounted on the frame, and a connecting rod extending from said steering gear to said steering knuckle substantially parallel with the top leaf of the spring."

"10. In a motor vehicle, the combination of a frame, a front axle, a steering knuckle pivoted to the axle, a wheel on

the steering knuckle, braking means between the knuckle and wheel, a spring connecting the frame and axle and comprising a plurality of leaves, said spring extending across the axle with a leaf secured against the axle, means for shackling the front end of said spring below the frame, means for pivoting the rear end of said spring to the frame, a steering gear mounted on the frame rearwardly of the axle, and a steering connecting rod extending from said steering gear to said steering knuckle substantially parallel with the top leaf of the spring."

"12. In a motor vehicle, the combination of a frame, an axle, a steering knuckle pivoted to the axle, a wheel on the steering knuckle, braking means between the knuckle and wheel, a spring connecting the frame and axle, said spring extending across the axle with its face secured against the axle, means for shackling the front end of said spring below the frame, means for pivoting the rear end of the said spring to the frame, a steering gear mounted on the frame rearwardly of the axle, and a connecting rod extending from said steering gear to said steering knuckle substantially parallel with the rear half of said spring and pivotally connected to said steering knuckle, said pivotal connection lying substantially in the longitudinal axis about which the axle rocks as the brakes are applied to the wheels."

We find ourselves in agreement with the conclusion of the tribunals of the Patent Office. The principal point of controversy arises over the consideration of the Hallner reference. As to this reference, three engineers of repute gave it as their opinion that the method of operation of the Hallner spring will not produce the same effect as that of the applicant's spring and shackle. In support of this, one of the affiants, Mr. Thomas A. Hill, submitted drawings showing what he conceived to be the effect in the operation of the Hallner spring and shackle.

In reference to these affidavits, both the tribunals below were of the opinion that there would be no essential difference in the operation of the Hallner and present Barbarino devices. The Examiner felt that additional drawings should be submitted, showing the effect of compression of the spring upon the gooseneck portion of the Hallner spring, being of opinion that a compression of this spring would not produce the exaggerated effect thought to be produced by the affiant Hill. It seems to have been the opinion of both the Board of Appeals and the Examiner that a compression of the Hallner spring would pull the shackle on the front end of the spring forward as the gooseneck portion of the spring was compressed, and that thus the same effect would be produced as exists in the shackle connection of the applicant. From an inspection of the drawings it seems quite apparent to us that this would be a result arising from a compression of the spring.

Even if the position which the shackle member normally occupies is essential, we find ourselves in agreement with the tribunals of the Patent Office which hold that it would not be inventive to take the dependent shackle member of Layman and adapt it to the front end of Hallner's spring.

The applicant already has a patent, No. 1,839,189. The figures in this patent show a shackle member at the front end of the semielliptical spring and a fixed pivot at the rear. Also there is the lateral adjustment in the shackle member. It has been pointed out by the Patent Office that claims 1 and 2 of the patent differ only from claims 6 and 7 now before us, in the statement that the shackle is below the frame of the vehicle in the application, while in the patent it does not so state.

In view of the showing in the references, we are convinced that such change in language does not describe a patentable distinction, and therefore we agree that, as to this feature, the Board of Appeals came to the right conclusion.

Finding ourselves in harmony with the decision arrived at in the Patent Office, the decision of the Board of Appeals is affirmed as to claims 2, 5, 6, 7, 9, 10, 12, 14, and 17. The appeal is dismissed as to claims 1, 8, 15, and 18.

Affirmed.